May it please the Court, David Berman for Plaintiff, Costco. Let me start with the relevant parts of the procedural history that gives rise to the issue that Costco presents to the Court. In the underlying lawsuit, Costco had two main claims. The first was a challenge to the discriminatory ban on direct sales by out-of-state producers to retailers in Washington when state law allowed in-state producers. Out-of-sale distributors? Out-of-state producers or distributors. We were focused on producers. In-state producers, wineries, breweries, could sell directly to retailers. Out-of-state producers were prohibited from doing so. If I could just interrupt you for a minute because I want to go to the heart of what at least I'm concerned about. Let's just assume arguendo that Zipes doesn't apply here. But I've got a real question about after Costco Wholesale v. Mullane, which you know is our recent court decision, did Costco, in quotes, substantially prevail? A lot of what you thought you had won, you lost. Did you substantially prevail in this case? Well, we certainly completely prevailed on the one issue, on the interstate commerce claim, which was we prevailed in the district court and originally the distributors appealed and then they dropped their appeal. We completely prevailed on the attack on posting and holding, and in fact on the whole basic framework that the district court had relied upon. What we lost on was a severability clause argument argued only, ironically, for purposes of this fee appeal by the distributors, not by the state. So the parties did stipulate to a fee award under the Clayton Act and under the Civil Rights Attorneys Fee Award Act in the district court. They stipulated to the full amount with an agreement that the district court would modify that after appeal if some parts were changed. All right, so you already have an agreement among the parties. Correct. Depending on what happens here, and obviously what happened earlier in our court on the merits issue, that the district court would resolve exactly how the fees get allocated, right? So in the event that we agree that ZEICH doesn't apply here, then basically what we need to do is send it back to the district court to sort it out. Correct. The mandate, I believe, is not issued yet on the merits appeal, but it will go back. This takes into account that somebody may request a rehearing and whatever else you want to do. But once the mandate issues, if we agree with the ZEICH's conclusion that I just mentioned, then we would send it back to the district court. Correct. We would ask you to reverse and direct the district court. Right, and I gather both parties agree, or however many parties are involved in that portion of it, have agreed to that. They have agreed to the overall amount and the fact that the district court will reassess it once the mandate issues. In fact, we've already reached agreement as to the precise amount for the interstate commerce discrimination claim, and that has recently been submitted to the district court. And is the agreement to which you make reference a part of the record? I don't remember seeing that. The original agreement starts at excerpts 163 and continues on for six or seven pages there. And that's about the attorney fee? Correct. Okay. And the fact that it will be, depending upon the results on appeal, that the district court will have jurisdiction to reassess that. Okay. The most recent agreement that the three parties have reached, putting aside the joint several liability of the distributors, as to the direct ship discrimination is not part of the record. That actually just got finished this week, and we will submit that to the court. I don't believe it changes anything. It's clear that there is some amount owed, Costco. It is clear that the district court is going to have to determine further exactly what that is after the mandate issues, and it is clear that there's a very live issue as to the joint several liability of the distributors. So in this case, all you're asking us to do really is to determine whether Zyck supplies. Correct. And the substantially prevailed issue would be for the district court. Correct, and actually also either this court or the merits panel or the district court in terms of our fee request on appeal. That's a separate issue that is not due yet. Is it fees or costs? The court's already decided that costs are not to be awarded. The case law is clear that fees are a different issue, and that because we did prevail, we will get some amount of fees. Okay, so, again, for purposes of what we're about in this particular panel, the agreement is that no costs will be awarded, right? Correct. Well, no costs in the merits. Okay, but what about on the appeal? On this appeal, if we were to prevail, I think we would be entitled to our costs. Correct, correct. As Your Honor mentioned, the question of a clean slate and the applicability of Zycks, and let me jump to that. If we were writing on a completely clean slate, if there were no Zycks, we think the answer would be easy, and we think this really is a clean slate. What would be the answer? The answer would be to look at the plain language of the Clayton Act, which the parties, all three parties, have stipulated as a basis for fees here. The Clayton Act says that a plaintiff shall recover its fees if it prevails. It doesn't explicitly say who pays those fees. Logically, that's defendant or defendants. But the specific language of the Clayton Act tells us even more than that because it specifies it's the plaintiff that will recover, and it specifies it will recover for prevailing. That naturally means the other side, the defendants, anyone who is aligned as a defendant would pay, and they would particularly pay if they attempt to keep the plaintiff from prevailing. The language in Section 26 is quite different from that in the Zycks statute, is it not? Correct. One's mandatory, one's may. One says may in its discretion, and the other says shall. One says any party, the other says plaintiff. I gather that the Congress intended that there be a strong incentive for counsel to be willing to take Clayton Act cases, and that's the reason why it wanted to make it lucrative and mandated the granting of attorney fees for the prevailing party. I wouldn't go so far as lucrative, but I would agree that they... I guess that's all a matter of opinion. Correct, Your Honor. But once we get past the difference between may under 1988 and shall under Section 26 of the Clayton Act and say, yeah, all right, fees are to be awarded, it's a separate question whether you award them against an intervener or against a party defendant. It is. And we have a case, I seem to remember, the Democratic Party blanket primary case here in Washington where the Grange intervened. Correct. Now why isn't the WB-WWA similar to the Grange? Well, they're not similar in fact, and they're not similar in the law that applies. Tell me why. Yes, in the Democratic Party case, you dealt with a statute that has similar language to Title VII, which was at issue in Zeitz. It was a shall or a may statute. It was a prevailing party statute. Yeah, we've gotten past that. Okay. Secondly, the Grange asserted that its members had separate constitutional rights that it was trying to protect. That is a distinction from here. The distributors had no separate legal rights. They simply defended on the merits. They say, well, they had some contract rights, but those are simply economic interests that arose from the statute. Does Costco denigrate economic interests? Costco does not denigrate economic interests, but they were not separate enforceable rights, and there was no argument. Unlike Zeitz, where the union came in and said, we have separate seniority rights. We didn't violate Title VII, and the court agreed with that. We have separate seniority rights that we want to protect as the court determines what to do with this employer that did violate Title VII. That's a very different situation. But that would seem to me to argue against you, because if you have separate rights, that probably puts on the plaintiff's plate more work. It may put more work, but remember, again, the language of the statute. What Zeitz was doing after Christiansburg was looking at this question of which party can recover and saying and limiting the discretion. Christiansburg limited the discretion and said, generally, an unsuccessful plaintiff will not have to pay fees. Zeitz merely took that to the next step and said, an unsuccessful intervener that is like a plaintiff in the sense it is asserting affirmative arguments and rights is more like that unsuccessful plaintiff, and under the discretion in that statute and the emphasis on party, not plaintiff, it should not have to pay fees. But in this case, counsel, the fact that Costco didn't sue the WVWWA, doesn't that take it out from under, at least under Zeitz and the Democratic Party case? If there was no possibility that they would be liable as a party to the lawsuit, how then is it logical to have them pay the attorney fees? Well, we pointed out cases that show that in this area of the antitrust law, we could have named them as a defendant. Right. I understand you could have. Well, it shouldn't make any difference in joint several liability. If you have five people you could have sued and you sue only three, normally those three are liable for the whole amount regardless, and you can pick one or three or five. That is joint several liability. The Supreme Court has said as a matter of interpreting the Clayton and Sherman Act that it does apply in the antitrust area. But remember the situation here. The distributors sought, received, and in fact implemented full defendant status. They were not an intervener like the union in the Zeitz case that came in and on balance they should be aligned with the defense side because they're trying to limit the relief that the plaintiff gets. They were a full defendant attempting to keep Costco from prevailing on the merits and in fact thereby increasing the cost. Now, this is a trade association, isn't it? It is, of distributors. Realistically, I mean, I don't know if this is in the record or not. You don't have to answer it if you don't want to, but we're going to get any money from them anyway. They get the money from the dues of the members. Why are you even bothering with this? Well, one, we have no other avenue of recovery on the direct ship appeal. The distributors were the only party that initially appealed on direct ship. They dropped their appeal before a briefing, but Costco incurred some amount in that interim period. Secondly, frankly, Costco is offended that taxpayer dollars are in a situation in which the state should have shared the expenses. This is more of the principle of it than anything else, and I don't mean the principle in the sense of the dollars and cents principle. I think that's correct, Your Honor, but there is an economic interest there that's a very real one. Let me also note that on the merits of the second claim, the claim with respect to the invalidity of the restraints under the antitrust laws, what the merits panel said. The merits panel, this is in the amended slip opinion 33-12, said the question was what precisely does it mean for a restraint to be hybrid? Netta answered that two pages later. The scheme, in effect, delegated a degree of regulatory power to the private actors. The rule to be taken from these cases is that state statutes creating unsupervised private power and derogation of competition are subject to preemption. That is the rule that was applied on that part of the case in the area where Costco has prevailed, the post and hold restraints. It is a rule that says that it is integral to the violation. The private party's action was integral to the violation. The difference between unilateral, which is protected, and hybrid, which is not, is the private party's role. So we believe that for both of those independent reasons, it is not appropriate to apply Zipes to the Clayton Act, to the antitrust provision. Secondly, we would argue that even if it is applicable under the Clayton Act, that it should not apply here, and this is really the Mallory case that we cite in the brief, which says that even under the Zipes application to statutes like Title VII, if an intervener acts as a full defendant on all the issues, fully aligned with the initial defendant, fully making the arguments on the merits, that the Zipes rationale does not apply. Finally, we note that as to the direct ship argument, that is the one place where we argue that under the Zipes unjustified-slash-frivolous standard, we satisfy that as well. We made a broader argument in the district court. The distributors are still responding to our broader argument and saying that it was proper to intervene, it was proper to argue on the merits of the antitrust restraints. They never explain why it was proper. After Granholm, the U.S. Supreme Court decided this very issue for them to contest validity, to make us go through some rejection. Yes, they do. They argue that their situation is quite different from Granholm. Granholm had to do with out-of-state wineries shipping into customers. Their position has to do with out-of-state distributors shipping into in-state retailers in much larger quantities, and they put together this argument, tenuous, I grant you, that beer and wine sold to distributors and retailers will cause the young people of Washington to drink more than wineries in New York shipping into other states. They made that 21st Amendment argument as a reason that issue should go to trial. It didn't even go to trial. What I'm talking about is, and that was an affirmative defense, as the merits panel in our case recently decided, an affirmative defense that they had the burden on. What we are saying is the first step of invalidity. Is it on its face a commerce clause violation? The district court granted a summary judgment, and they appealed that, not the affirmative defense, but they also appealed that question of invalidity, despite Granholm. They also, though, were able to change the form of the injunction, were they not? They argued for an injunction that gave the legislature the ability to decide whether to level up or to level down. It was still a violation, though. Costco still prevailed. I guess, following up on Judge Baez's question, it's really a question whether after Granholm there was anything left to say. And I guess his question and mine was, there was something to say. Maybe the big question had been decided, but there were things at the margins that were legitimate questions that they could raise. If they had only argued the margins, we'd be in a very different situation. They argued fundamentally that it did not apply merely because it was shipments to retailers as opposed to shipments to consumers. Thank you. You're down to four minutes. Fine. Please, the Court. I'm John Guanola, appearing this morning on behalf of the intervener defendant in Appalooie, WBWWA. Let me address initially that last thing. Save that when you put all those words together. I usually say the association. The association. Judge Baez, I think you were close to being, to correct on describing our position below. Our position below on the Commerce Clause case was the fact that the Supreme Court said that Michigan and New York had not justified a law prohibiting sales to consumers should not deprive Washington of the opportunity to have a trial trying to justify its laws limiting sales by out-of-state suppliers to retailers. Judge Peckman said, no, there is no difference between those situations. You don't get a trial. You don't even get to attempt to justify them beyond whatever showing we thought we'd made in summary judgment. So I think it was a legitimate position. We'd filed a notice of appeal, and then the legislature amended the law, essentially rendering the appeal moot. Counsel, what's your best argument for why the language in Section 26 is anything like the language in the statute applied in Zipes? I don't think there is a good argument that the language in the statutes is similar. Why then should Zipes apply? I mean, the logic behind the attorney fees and the Clayton Act and the other law are entirely different, aren't they? Well, there are a couple of reasons why the analysis should apply. In the first place, none of the things served by a fee-shifting statute would be served by awarding fees in a situation such as this. There's no judgment to protect from erosion. There's no need to encourage access to the courts. There's no wrongdoing to protect. There's no wrongdoing to punish. Beyond that, even if you don't look at Zipes, if you just look at Clayton Act liability cases, there would be no liability. Why do you respond to your co-counsel's or opposite counsel's argument that this is a joint and several liability situation and, therefore, you're covered? Well, I respond by saying joint and several liability is a function of liability. In order for Mr. Berman to establish joint and several liability, he has to first prove liability. His example was a good one. If you have five people involved in a conspiracy and you sue three, you can get joint and several liability against the three if you win. You certainly can't get it against the two you didn't sue because you have not established. Your answer to his joint and several liability argument is, Mr. Berman, you chose not to sue the WBWA. Therefore, there cannot be joint and several liability. Right, and it goes beyond just choosing not to sue them. He chose not to sue them. He took no steps to develop any evidence of wrongdoing on the part of the association or its members. He could have amended the complaint. He didn't do that. He could have filed a motion for declaratory judgment and named us as a defendant. But? But he didn't. But he didn't because you stuck your nose into somebody else's fight. Well, but it wasn't somebody else's fight. Well, whose fight was it? He hadn't sued you. So it wasn't your fight at that point, was it? Well, it was certainly our fight in the sense that the economic interests and statutory rights. You asked to come into the fight. We did ask to come in. And you asked to come in on the side of the defendant. We did. That's correct, Your Honor. And when you put the sheep's robe on, despite that fact, you were still a wolf. You were against the plaintiff. We were against the plaintiff, Your Honor, but I don't believe there's any basis for finding liability on the part of the association or its members. Mr. Berman's argument that somehow because these restraints were hybrid that we're somehow engaged in illegal activity. Well, you were lobbying the state to impose them, weren't you? We didn't lobby the state to impose them initially because we didn't exist when the law was first adopted at the end of Prohibition. We have lobbied for changes over the years, and we've lobbied to preserve changes over the years. But that conduct is clearly protected, and that certainly reinforces the idea that we have an interest under the statute that we needed to protect in this case. In this particular instance, what's intriguing to me about this is that you're not a typical intervener because really Costco was suing – we'll just name it. You've got Entity 123, and you own 123 basically, or they own you. And you can have your entity fighting the battle of 123 even though you're not sued. They can do whatever they want with you because they control you. You are their lobbying representative. So, in effect, it's almost like when you heard the previous argument about an alter ego. In effect, the WBWWA is the alter ego of the people who were sued. How do you respond to that? The people that were sued were the Washington State Liquor Control Board members. I don't see how we can be their alter ego. We are people subject to their regulation. We lobbied the legislature, and we lobbied them on occasion to get specific treatment, specific interpretation of the laws. But we are not their alter ego, and we had no assurance going in. That's why we intervened. We had no assurance that they were going to defend all the laws the same way that we wanted to defend them. My analogy is inept because, unlike the distributors that control you, the defendants here were strictly state entities and employees of the state. Absolutely. Mr. Berman could perhaps have sued some of the distributors. In fact, it would have made more sense to sue the distributors because, you remember, in this case, none of the day-to-day activity of the association is being challenged. What's being challenged is the fact that the distributors complied with the law. And there are other cases, Mr. Berman is correct, in which individual entities have been found liable for violating antitrust laws when they relied on state statute. But to my knowledge, every one of those has involved a situation where the defendant had the option to act in an anticompetitive way, did it, and hoped the statute protected them. But in this case, to follow up on Judge Hood's analogy with a twist, you really did have a dog in this hunt. This was critical to your members. And you got involved because your members had deep economic interests involved. This wasn't just some high-minded kind of a thing. This was bread and butter to your folks, right? It was. It was. And I think it's – I'm not sure what the word is. It's kind of silly, I think, to say we don't have a statutory right. If there was a statute that said only distributors can sell to retailers, that said granted to distributors an exclusive right to sell, you would say that's a statutory right. But when you have a statute that says retailers can't sell to other retailers and the net effect is to give distributors an exclusive right, you have a statutory interest. So we clearly had an interest in it. But my point would be that there's no way that Mr. Berman could have established liability on the case as he brought it against the association or any of its members. None of them did anything. He didn't allege that there was a conspiracy between your association and the state legislature to enact anti-competitive regulations. He did not allege any kind of a conspiracy. He made no attempt to discover evidence of a conspiracy. All he did was argue that because we complied with the law, that that made the law invalid. Well, in a manner of speaking. But then the next thing you know, you just said it a minute ago. You said, you know, we came into this fight. We weren't in the fight. We were standing out on the side and we looked around and we said, whoops, now the state's going to probably roll over on us. They're going to turn their back up, do a dying cockroach on us. I didn't mean to say that because I didn't believe that. Well, but that's what you implied, that you got in because you were afraid that your rights were not going to be protected by the state. That's correct, Your Honor, but that doesn't mean that we thought they were going to roll over. For example, I mean. in response to their complaint. That is exactly right. You didn't want the state to say all of a sudden, as they occasionally do when they cop with their knickers down, so to speak, they say, well, we made a mistake. We made a mistake. You know, in light of Granholm, we think the plaintiff is right. You didn't want him to say that. You were afraid he might say that. I was afraid that we were afraid they might say that on some aspect of the case, and the majority of the case dealing with the antitrust issues was not particularly impacted or not impacted at all by Granholm. There were all kinds of possibilities. So you came in and you said, we want to be just like the state. We want the same. We want to argue the validity of all these regulations. You didn't ask to be an amicus. You said, we want to be a party. Correct. We wanted to intervene and have the rights of a party so that we could protect ourselves. Sometimes when you intervene and ask to have the rights, the same rights as a party, don't you think that you become a party, just as if you'd have been named? For most purposes we do, and maybe in this case for all purposes we do, but the fact remains there is no finding of liability on the part of the WWWA for having violated the antitrust laws. Judge Peckman said in her ruling, which Mr. Perman is appealing, she said there has been no finding of liability in this case. That ruling has not been challenged. None of the underlying findings of fact, conclusions of law have been challenged. So that's a verity on this appeal. But she relied on Zipes, did she not? She relied on Zipes. But whether you rely on Zipes or not, a verity on appeal is that there has been no finding of liability against WPWA or its members. Therefore, you cannot say that Mr. Berman prevailed, in the sense that we're talking about under the Clayton Act, against the association. He didn't assert a claim against the association. Do you agree with Mr. Berman's point that that issue would be one that would be properly sent back to the district court to resolve? What issue? Whether they substantially prevailed. In other words, let's just say hypothetically that we conclude that Zipes doesn't apply, that in fact you can be liable. In that case, as I understood it from him, there was an agreement that was deposited with the district court, and he cited the record ER-163 as such. And the total amount of attorney fees was there, but the agreement is when these appeals are finished that you go, assuming that there is any potential liability, you go back to the district court, the district court allocates it. Is that not the forum? The agreement was that the state and Mr. Berman agreed on the amount of fees due if Mr. Berman prevailed on the merits appeal. We agreed not to contest that. We disputed that we were jointly and severally liable. Right. And I'm saying if we conclude, arguendo, that you are, the district court is the forum to resolve the issue of actually who owes what and whether, in fact, there has been proof that you were liable in the technical sense, not that you could be liable as we're resolving. Well, I mean, I think if you're talking about two different liabilities, aren't you? I think we are. You're saying that you were found to be not liable on the antitrust. Correct. We're saying that we have no liability on the merits. Right. And the question might be whether you're liable for attorney's fees under the agreement and if Zipes doesn't apply. That's a different question. Right. And I'm trying to, I guess my position is you can't be liable on the second unless you're liable on the first. Correct. Correct. And my position further is that I think that the logic of Zipes, although Zipes is not controlling, I grant you because the language is different, the logic is compelling, but even if you don't look at Zipes, even if you look just at Clayton Act analysis, you have to conclude that there was no liability and therefore the fees cannot be assessed against the association. And again, it's a technical point, but I think it illustrates where we are. That's because the district court made a finding that you were not liable? Is that what you're saying? There is no finding of liability or improper conduct of any sort in the findings of fact conclusions of law. But I understood you to say that that was because of Zipes, right? No. In her opinion, the one that's being appealed here, and I would invite you to look at page 3 of the order, line 7, Judge Peckman said, in this case there has been no finding that the WB-WWA violated federal antitrust law or Costco's constitutional rights. So you think that's dispositive of this case? Well, I do because I think that there not only was no finding of liability, there could not have been any. They sought an injunction, they got it. The injunction ran against the state. The injunction didn't run against WB-WWA or its members. Has that portion of Judge Peckman's opinion been appealed? No. It has not been questioned. And that's why I said Costco didn't question any of the findings of fact conclusions of law on the main case that underlie that opinion. So your position is they couldn't get a judgment executed against the WB-WWA because Judge Peckman's order says it's not liable for antitrust violations, and that has not been appealed. So then how can they get attorney's fees against you? More or less. More or less, yes. That is. And I just think there simply is no analysis that gets them there. The interesting thing about the hybrid restraint, in the case below, Mr. Berman argued vehemently that all you had to show was that two people obeyed the law and did something they couldn't have agreed to do, that you didn't have to have anything akin to concerted action in order to find a restraint hybrid. Now he says, gee, when a law has been found to be hybrid, that necessarily means that there was something akin to concerted action. If you look at the decision on the merits of this case, you will see that the court upheld the ruling on post and hold and relied on the Miller v. Headland case. Essentially you have a statute that compels distributors to post their prices publicly, so essentially compelling them to exchange price information and compels them to hold them for 30 days. And the court said, and Miller said, even though there's no showing, no evidence, that the distributors engaged in any kind of concerted activity, the statute effectively serves as the concerted activity or the collusion, so we're going to invalidate the statute. That's the same kind of reasoning. So I said before, all the members of WBE-WWA did was comply with the law. They unilaterally agreed to it. I'm looking at this order, and that's Judge Peckman's order, and she also discusses the innocent intervener concept under Zipes, and she makes certain, if you will, the court makes certain observations. For purposes of our court, what's the standard of review here? Are we reviewing this de novo as a construction of law or are we viewing this with some deference as a finding of fact? I've been trying very hard to figure out a way that I could plausibly tell you I thought it was anything other than de novo, but I believe it is de novo. However, I think that the question of our liability on the merits is not only not an issue of de novo review, it's a verity on appeal. I don't think that question can be challenged at this point. She has concluded that there was no finding of liability, no showing of liability. Help me here. You seem to be conceding, and it certainly makes this case to me, is that we have de novo review here. We're reviewing whether Zipes applies, whether the statute applies. So whatever the court may have said in her construction of the statute, we're reviewing it de novo. So we're really not bound by what she says in that, should we decide to come to a contrary. Except that you have to construe it in the context of the facts of this case. Of course. And those facts are a verity, and the fact that can't be changed is that there is no liability. I guess that's my question to you, is to the degree that Judge Peckham referred to facts, what is the standard of review? Is that part and parcel of the statutory construction and our construction of case law, i.e. de novo, or is there some other differential standard we apply to her determination of the in quotes facts? No, I think if you want to look at the facts and review them, then it's an abuse of discretion standard. But there's been no challenge to any of those facts. Costco has not appealed any of those findings. So I don't know how the court is in a position to review them anyway. Does it have to when, in fact, it is appealing the very issue? It seems to me, and I did review this order, but it's been being presented in a slightly different context than the way I reviewed it before, though. It seems to me that the court clearly contemplated that the issue of attorney fees was going to be appealed and that this order simply, in effect, kept in place the agreement that you all have, I guess it was at ER 163 at SAG. And so the district court is just going to wait and hear what the court of appeals has to say. Isn't that what happened? No, no. What happened was the district court assumed that the merits ruling was going to be appealed. And so there was an agreement that if there was anything other than a complete affirmance, that the issue of the amount of fees would go back to the district court for redetermination. There was no presumption that the question of joint and several liability would be appealed. But the fact is, Chief, there's no dispute that she found that you weren't liable. Correct. Under any theory that the plaintiff posited. Correct. Had Mr. Berman chosen to appeal that ruling, I'm sorry? Should he have chosen to appeal that ruling on the direct appeal, then there would be another question, wouldn't there? There would. There would, I believe. The fact of the matter is, as far as we're concerned, you had no liability. That's correct. And I think conceivably he could have raised that issue on this appeal, but he didn't. No liability under either 1988 or Section 26. Correct, correct. She said there's been no finding that WBWA violated the antitrust laws or those constitutional rights. Had Mr. Berman chosen to sue WBWA and had the case come down exactly the way it did, he would have lost. He didn't move to amend his complaint and sue you as defendants. No, no. And he didn't even try to develop evidence of improper conduct by the distributors. So, as I said, had he sued us and the case went exactly the same way, he would not have gotten a judgment against us. And this whole issue of joint and several liability, wouldn't he? It would be like saying, well, I sued three people for price-fixing conspiracy. The jury found one of them not guilty, but they owe me fees anyway because they were part of the case. Without establishing the underlying liability, there is no basis for fees. I think that you're stretching a little bit to say that you were acquitted. Thank you very much for your time. Thank you. Mr. Berman, you know what we want to ask you. Yeah, I want to know Judge Pechman's order. Do you agree with your opposing counsel that you did not appeal the order? No, we specified that we appealed the order. Okay. And it is a de novo review. She made rulings of law. She referred to this question of liability, and I don't think that's a fact-finding. There was no disputed facts resolved as part of the order. In your notice of appeal, did you make any reference to the order? Indeed, that was what you appealed. We did appeal that. Correct. We specified that. So your opposing counsel is mistaken. I think what he meant to say is that we did not specify that there were factual findings that we challenged. There were no factual findings as part of that order other than the stipulated factual amount of the fees that was recovered. So the question, I guess, that I have to have clear in my mind is, is there any judgment against the defendant or against the intervener? Well, that's an interesting question because of the scope of an injunction. An injunction binds not only the party that is named but also all those acting in concert and can be enforced against those. Was there any finding that the defendant or the intervener, or defendant-intervener, I guess is the proper name, did anything particularly wrong in this matter? Well, particularly wrong and liable is different than innocent. The Ninth Circuit merits... Innocent is a different term. We're not talking about criminal matters. Correct. And what Zipes talks about is innocent or non-blameworthy. It doesn't limit itself to liability. It does mention liability once. Remember the status of this case. This was not a damages action in which we're attempting to establish liability. It was a declaratory judgment and an injunction action. And the theory that under the antitrust law, which the merits panel has now affirmed, was that it is a hybrid restraint on the face of this statute. It incorporates the private parties into the regulatory structure, and that makes it hybrid. That doesn't mean that we had an essential element of showing that they were malicious or that they conspired. The antitrust laws are not limited to conspiracies. The antitrust laws apply... So they're liable under joint and several liabilities. They're liable to you because they complied with state law. Correct. That is exactly right. And if you listen to his argument, it should be convincing to you that they should be responsible for fees. So they didn't enact the state law. He says, quote, we have an interest under the statute. And the Ninth Circuit said, yes, you become part of the regulatory scheme as to these two restraints that made it a hybrid restraint. He said we had important economic values out of that. And they came in and tried to keep us from prevailing in declaring the statute unconstitutional and in joining it. They did everything a defendant would do to stop us from trying to get an injunction, and we got an injunction that gave us the full relief. It didn't need to specify something further as to them. That was not an essential part of our case. But they still tried to keep us from prevailing in getting injunctive and declaratory relief. The question of liability for damages is irrelevant in this situation. Don, let me just mention a couple of other things. On the alter ego question, they alleged as part of their intervention that they were acting on behalf of the distributors. That was their interest that they were coming to the table with. On the question of what happens with whether we name three out of five defendants, I think the court's already made the point. If we only name three and a fourth intervenes to become a defendant, becomes a defendant for all purposes, that defendant is liable for our fees. There really shouldn't ñ there's no logical reason to apply a different rule in this situation. Your Honors, if you have no further questions. Thank you very much. Thank you. The case of Costco Wholesale v. Hone will be submitted.
judges: Bea, Smith, Hood